IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARVIN ANTONIO SANTOS ESCOBAR, | * | |
| | * | |
| Petitioner, | | |
| | * | Civil Action No. GLR-26-1740 |
| v. | | |
| | * | |
| MARKWAYNE MULLIN, et al., | | |
| | * | |
| Respondents. | | |
| | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Petitioner Marvin Antonio Santos Escobar's

Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents Markwayne Mullin,

Todd Lyons, Vernon Liggins, and Todd Blanche (collectively "Respondents" or "the

Government") Motion to Dismiss (ECF No. 10). The Motion is ripe for disposition, and no

hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below,

the Court will grant the Petition in part and deny it in part and deny the Motion as moot.

## I.    BACKGROUND

Petitioner Marvin Antonio Santos Escobar is a citizen and native of El Salvador.

(Pet. Writ Habeas Corpus ["Pet."] ¶ 32, ECF No. 1). He first entered the United States on

or about December 12, 2004, (id. ¶ 33), after which he was ordered to appear before an

Immigration Judge ("IJ") in Texas on February 28, 2005, (Notice to Appear ["NTA"] at 1,

ECF No. 1-1).[1] According to Respondents, an IJ ordered Santos Escobar removed, in-

---

[1] Unless otherwise noted, citations to the page numbers refer to the pagination

absentia, on February 28, 2005. (Mem. L. Supp. Resp. Pet. Writ Habeas Corpus & Mot. Dismiss ["Resp."] at 3, ECF No. 10-1). In July 2018, Immigration and Customs Enforcement ("ICE") officers allegedly took Santos Escobar into custody in Maryland due to the 2005 removal order. (Id.). Respondents state that an IJ then granted Santos Escobar's motion to reopen his removal proceedings due to the issuance of the removal order in-absentia. (Id.). Santos Escobar was released on bond on December 10, 2018. (Id.; Pet. ¶ 34; Custody Order at 1, ECF No. 1-2).

Four years later, on December 21, 2022, an IJ ordered that Santos Escobar be removed to El Salvador but granted his request for withholding of removal to El Salvador under the Convention Against Torture. (Pet. ¶ 35; Removal Order at 1, ECF No. 1-3). Since the issuance of this removal order, Santos Escobar "has remained in compliance with all requirements imposed by immigration authorities, including attending annual check-ins at the Baltimore Field Office as instructed." (Pet. ¶ 36). He also has maintained valid employment authorization under the Withholding of Removal category, and his most recently approved employment authorization does not expire until July 8, 2027. (Id. ¶ 37).

On May 1, 2026, Santos Escobar appeared for a regular check-in at the Baltimore ICE Field Office. (Id. ¶ 40). According to Respondents, ICE had determined at Santos Escobar's April 2026 check-in that he was subject to a final removal order. (Resp. at 3). So, at the May 1 check-in, ICE detained Santos Escobar "to effect his removal to Mexico." (Id.). ICE served Santos Escobar with a Warrant of Removal/Deportation, a Notice of

---

assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Custody Determination, a Warning to Alien Ordered Removed or Deported, a Notice of Removal, and a Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4). (Id. at 3–4; ECF Nos. 10-2–10-3). The Warrant states that ICE detained him because he is subject to a final removal order (Immigr. Docs. at 1, ECF No. 10-2) The Warning explained that Santos Escobar would not be permitted to enter the U.S. for a period of ten years because he was deemed inadmissible under Section 212 of the Immigration and Nationality Act. (Id. at 4). The Notice of Removal notified Santos Escobar that ICE "intends to remove [him] to Mexico." (Id. at 6). And the Notice of Imminent Removal states:

> This letter is to inform you that, pursuant to 8 C.F.R. § 241.4(g)(4), [ICE] will not conduct a custody review at this time. ICE is in possession of a travel document to affect your removal and expects this to occur in 05/2026. You will remain in custody pending your removal.

(Id. at 7).

On the day of his detention, Santos Escobar expressed a fear of removal to Mexico. (Pet. ¶ 42). An asylum officer from the U.S. Department of Homeland Security interviewed Santos Escobar and, in a notice issued on May 11, 2026, determined that he "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." (3d Country Screening Notice, ECF No. 10-3).

Santos Escobar filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 while detained in Baltimore on May 1, 2026. (ECF No. 1). Respondents filed a consolidated Response and Motion to Dismiss on May 26, 2026, (ECF No. 10), and Santos Escobar filed a Reply on June 3, 2026, (ECF No. 12).

3

## II.   DISCUSSION

### A.   Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B.   Analysis

Santos Escobar argues that his continued detention violates 8 U.S.C. § 1231 and his due process rights, that the Government failed to follow its own regulations in revoking his supervised release, and that his removal to Mexico without judicial review of his negative fear determination violates his due process rights. (Pet. ¶¶ 45–68). The Government responds that ICE is authorized to detain and remove Santos Escobar under 8 U.S.C. § 1231(a)(6), that his continued detention is constitutionally permissible, and that he has received all process due to him under law. (Resp. at 2). The Court will address each issue in turn.

#### 1.   Santos Escobar's Detention Under 8 U.S.C. § 1231(a)

The facts and arguments concerning Santos Escobar's due process claim as to his detention are similar to those in Solis Nolasco v. Noem, 820 F.Supp.3d 398 (D.Md. 2026), Montoya Palacios v. Baker, No. GLR-25-4045, 2026 WL 171690 (D.Md. Jan. 22,

2026), aff'd sub nom. Palacios v. Bacon, No. 26-6251, 2026 WL 1154321 (4th Cir. Mar. 24, 2026), and other cases before this Court. See Hr'g Tr. 3:10–4:10, 5:9–23, 9:23–11:5, Cordon-Salguero v. Noem, No. GLR-25-1626 (D.Md. June 23, 2025) (raising due process claims as to petitioner's detention and removal to third country where petitioner was complying with order of supervision and detained at scheduled check-in). As in those cases, there is no dispute here that Santos Escobar is detained under 8 U.S.C. § 1231(a), which requires the Attorney General to detain noncitizens who are subject to a final removal order during the ninety-day removal period following the issuance of that order. (See Resp. at 5; Reply Mem. Supp. Pet. Writ Habeas Corpus ["Reply"] at 12–13, ECF No. 12); see also 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). There also is no dispute that the Government may detain Santos Escobar beyond the removal period because he is inadmissible under 8 U.S.C. §1182. (See Resp. at 5; Reply at 12–13); see also 8 U.S.C. § 1231(a)(6). Like in Solis Nolasco and Montoya Palacios, the dispute lies in whether Santos Escobar's removal is likely to occur in the reasonably foreseeable future such that the Government may continue to detain him beyond the removal period. (Resp. 7–9; Reply at 13–15).

The Court reviewed Zadvydas v. Davis, 533 U.S. 678, 701 (2001), the seminal case on detention beyond the removal period, in Solis Nolasco:

> In Zadvydas, the Supreme Court considered whether the Government may detain a noncitizen under 8 U.S.C. § 1231(a)(6) "indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. at 682. The two noncitizen-petitioners in Zadvydas received removal orders and had been detained well beyond their removal periods under 8 U.S.C. § 1231(a)(6), partly because their native countries and other countries to which they had connections had refused to accept them. Id. at 684–86. The

5

petitioners challenged the extent of the Attorney General's authority to detain them on a seemingly indefinite basis despite the unlikelihood of the Government securing their removal. Id. at 684–86, 688.

In assessing that authority, the Supreme Court recognized that "Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area." Id. at 695. "But that power," the Court explained, "is subject to important constitutional limitations." Id. And "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." Id. at 696 (citation omitted). Considering the significant liberty interest at stake and the lack of "congressional intent to authorize indefinite, perhaps permanent, detention," id. at 699, the Court held that a noncitizen's detention pending removal is presumptively reasonable only for six months (inclusive of the removal period), after which, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," id. at 701.

Solis Nolasco, 820 F.Supp.3d at 404.

Here, Santos Escobar argues that his detention is unlawful under Zadvydas because his removal is not likely to occur in the reasonably foreseeable future. (Pet. ¶¶ 46–54).[2] Respondents contend that Santos Escobar's claim is premature because he has not yet been

---

[2] Santos Escobar raises this claim as both a violation of 8 U.S.C. § 1231(a)(6) (Claim One) and a due process violation under Zadvydas (Claim Two). (See Pet. ¶¶ 45–54). Section 1231(h), however, states that "[n]othing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1231(h). "The Court, therefore, will deny relief under [Claim One] and will address the merits of [Santos Escobar's] Zadvydas argument as to his due process claim under [Claim Two]." Solis Nolasco v. Noem, 820 F.Supp.3d 398, 404 n.3 (D.Md. 2026)

detained for six months. (Resp. at 7). But the Court rejected this exact argument in <u>Solis Nolasco</u>, concluding that the six-month presumptively reasonable period expires six months after a noncitizen's removal order becomes administratively final and does not restart upon the noncitizen's re-detention. 820 F.Supp.3d at 405 (collecting cases). Thus, in this case, Santos Escobar's six-month period expired June 21, 2023—six months after his removal order became final on December 21, 2022. (Removal Order at 1).[3]

Respondents also argue that, even if not premature, Santos Escobar's claim is meritless because he has not provided good reason to believe that his removal is not likely to occur in the reasonably foreseeable future. (Resp. at 8–9). This Court disagrees.

Santos Escobar has been granted withholding of removal from the only country to which he has a claim to citizenship or legal immigration status. (Pet. ¶¶ 35, 39; Reply at 3, 9; Removal Order at 1). "This substantially increases the difficulty of removing him." <u>Munoz-Saucedo v. Pittman</u>, 789 F.Supp.3d 387, 398 (D.N.J. 2025). Santos Escobar further states, and the Government does not dispute, that he has complied with all requirements imposed by immigration authorities" for the past three-and-a-half years, (Pet. ¶ 36; <u>see generally</u> Resp.), during which time Respondents could have, but apparently did not, work towards securing Santos Escobar's removal, (Reply at 6). Moreover, by granting Santos Escobar an Employment Authorization Document in January 2026, which remains valid

---

[3] The Court also noted in <u>Solis Nolasco</u> that "the six-month presumption of reasonableness shifts the burdens between the Government and the noncitizen-detainee, but it does not prohibit judicial review of a noncitizen's detention for six months. Thus, even if [Santos Escobar's] six-month period had not yet expired, his Petition still would not be premature." 820 F.Supp.3d at 405 n.5 (citing <u>Cruz Medina v. Noem</u>, 794 F.Supp.3d 365, 375–76 (D.Md. 2025))

through July 2027, (Pet. ¶ 37), the Attorney General determined that Santos Escobar <u>could not be removed</u> either because the countries designated in his removal order refused him or because his removal "is otherwise impracticable or contrary to the public interest." 8 U.S.C. § 1231(a)(7).

The Government has provided no information to suggest that Santos Escobar's removal will occur in the reasonably foreseeable future other than general statements that ICE "intends to remove [him] to Mexico" and that "ICE is seeking his removal to a third country . . . ." (Immigr. Docs. at 6; Resp. at 8). These "bare assertions," however, are insufficient to rebut Santos Escobar's contrary showing. <u>Solis Nolasco</u>, 820 F.Supp.3d. at 406. The Government also offers an unsubstantiated statement that "ICE is in possession of a travel document to affect [his] removal and expects this to occur in 05/2026," (Immigr. Docs. at 7), but Respondents provide no evidence of this alleged travel document. Respondents also state that there have been "hundreds of successful removals to Mexico over the last year," (Resp. at 8), but this generalized observation does not demonstrate that Santos Escobar, specifically, will be removed to Mexico successfully, particularly where the Government has provided no indication that Mexico has agreed to accept Santos Escobar or that the Government has commenced the steps necessary to secure Mexico's acceptance, <u>see Heng Meng Lin v. Ashcroft</u>, 247 F.Supp.2d 679, 686 n.9 (E.D.Pa. 2003) ("[S]tatistics on the number of aliens who have been successfully removed to a certain country may not itself demonstrate that an alien will likely be removed to that country in the foreseeable future."); (<u>see also Cevallos Gonzalez v. Noem</u>, 1:25-cv-2358, Hr'g Tr. 8:12–9:2, ECF No. 12-9 (Government counsel explaining that noncitizen must be brought

8

to southern border and presented to Mexican officials to "decide whether or not to accept the [noncitizen] into their country")); Lambert v. Warden, No. EP-26-CV-00427-DB, 2026 WL 926216, at *2 (W.D.Tex. Apr. 6, 2026) (Government representing that "Mexico will only accept third country nationals if they consent to removal to Mexico").

Overall, Santos Escobar has provided good reason to believe that his removal to Mexico is not likely to occur in the reasonably foreseeable future, and the Government fails to rebut that showing. Santos Escobar's continued detention, therefore, violates his due process rights under Zadvydas.[4]

## 2.      Santos Escobar's Removal to a Third Country

Alongside his detention, Santos Escobar argues that his removal to a third country without IJ review of his negative fear finding violates his right to procedural due process. (Pet. ¶¶ 66–68; Reply at 15–17). Respondents contend that Santos Escobar has received all process due to him and that, to the extent he challenge's ICE's reasonable fear screening procedures as constitutionally deficient, his claim is more appropriately addressed in the pending nationwide class action lawsuit D.V.D. v. U.S. Department of Homeland Security, 778 F.Supp.3d 355 (D.Mass.), op. clarified, No. CV 25-10676-BEM, 2025 WL 1323697 (D.Mass. May 7, 2025), op. clarified, No. CV 25-10676-BEM, 2025 WL 1453640 (D.Mass. May 21, 2025), recons. denied, 786 F.Supp.3d 223 (D.Mass. 2025), and appeal

---

[4] Because the Court finds Santos Escobar's detention unlawful on these grounds, the Court declines to address his claim that his detention is unlawful due to the Government's alleged failure to follow the appropriate procedures in revoking his conditions of release. (See Pet. ¶¶ 59–65; Reply at 6–12).

dismissed and remanded, No. 25-1393, 2026 WL 1102937 (1st Cir. Feb. 20, 2026). (Resp. at 10).

Courts in this district have addressed this question numerous times. In some instances, courts have concluded that the claim should be addressed through the D.V.D. litigation due to "[b]asic principles of comity and judicial economy." Solis Nolasco, 820 F.Supp.3d at 408 (quoting I.V.I. v. Baker, No. JKB-25-1572, 2025 WL 1519449, at *2 (D.Md. May 27, 2025)); see also Tanha v. Warden, Balt. Det. Facility, No. JRR-25-2121, 2025 WL 2062181, *8 (D.Md. July 22, 2025); Ghamelian v. Baker, No. SAG-25-2106, 2025 WL 2049981, at *3, 5 (D.Md. July 22, 2025). In other instances, courts have addressed the claim notwithstanding the D.V.D. litigation because not doing so "would effectively preclude [the petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the D.V.D. class if he is removed before the class-wide claims are resolved." Portela-Hernandez v. Trump, No. BAH-25-1633, 2026 WL 74042 (D.Md. Jan. 9, 2026) (quoting Sagastizado v. Noem, 802 F.Supp.3d 992, 1008 (S.D.Tex. 2025)); see also Mendoza Palacios v. Mullin, No. ABA-26-648, 2026 WL 933319, at *4 (D.Md. Apr. 7, 2026).

The Court adopts the reasoning of the latter camp, incorporates by reference the analyses in Portela-Hernandez v. Trump, No. BAH-25-1633, 2026 WL 74042 (D.Md. Jan. 9, 2026), and Mendoza Palacios v. Mullin, No. ABA-26-648, 2026 WL 933319 (D.Md. Apr. 7, 2026), and concludes that Santos Escobar has a due process right to IJ review of his negative fear determination before removal to a third country. See Portela-Hernandez, 2026 WL 74042, at *10–12 (applying the Mathews v. Eldridge, 424 U.S. 319 (1976) factors

10

and holding that petitioner is entitled to IJ review of his negative determination because (1) petitioner's private interest in not being prosecuted or tortured in Mexico is "significant enough to justify procedural protections"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards' are high"; and (3) requiring IJ review of a negative fear determination is a "minimally burdensome procedural safeguard" (citation modified)); Mendoza Palacios, 2026 WL 933319, at *6–8 (applying same analysis and reaching same conclusion in context of motion for preliminary injunction).

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Santos Escobar's Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES as MOOT the Government's Motion to Dismiss (ECF No. 10).[5] A separate Order follows.

Entered this 10th day of June, 2026.

/s/
George L. Russell, III
Chief United States District Judge

---

[5] As the Court explained in Solis Nolasco, the proper response to a habeas petition is to file an Answer (not a motion to dismiss), to which the petitioner may file a Reply. 820 F.Supp.3d at 409. Because Respondents' Motion to Dismiss is simultaneously their Answer through a single brief, (see ECF No. 10), "the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Petition necessarily resolves the Motion to Dismiss. The Court, therefore, denies Government's Motion to Dismiss as moot," Solis Nolasco, 820 F.Supp.3d at 409.